IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BELDEN TECHNOLOGIES INC. and BELDEN CDT (CANADA) INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civ. No. 08-63-SLR ) |
| SUPERIOR ESSEX COMMUNICATIONS LP and SUPERIOR ESSEX INC., | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM ORDER**

At Wilmington this 2nd day of September 2010, having considered the letters (D.I. 222; D.I. 223) submitted in connection with Superior Essex's oral motion to stay litigation with respect to U.S. Patent Nos. 5,424,491 ("the '491 patent"), 7,135,641 ("the '641 patent"), 6,570,095 ("the '095 patent"), 6,998,537 ("the '537 patent") and 7,179,999 ("the '999 patent") (collectively, "the patents at issue");

IT IS ORDERED that Superior Essex's oral motion to stay is denied.

**1. Background.** Belden is the owner of the patents at issue, as well as U.S. Patent Nos. 6,074,503 ("the '503 patent") and 7,339,116 ("the '116 patent") (collectively, along with the patents at issue, "the Belden patents"), which are generally directed to telecommunications cables and methods of making such. On January 29, 2008, Belden commenced this patent infringement action against Superior Essex. In addition to various defenses asserted in response to Belden's complaint, and consistent with an emerging trend in patent litigation, Superior Essex subsequently filed a request with the

United States Patent and Trademark Office ("PTO") for *inter partes* reexamination of the '095, '537, '999, and '641 patents, and *ex parte* reexamination of the '491 and '503 patents. The PTO, determining that a substantial new question of patentability existed for each of the Belden patents, granted the requests and initiated reexamination proceedings.

    a. By status report filed on June 24, 2010, Superior Essex advised the court that the Central Reexamination Unit ("CRU") of the PTO had rejected all of the claims of the patents at issue. Specifically, the CRU has issued an Action Closing Prosecution ("ACP") in each of the patents undergoing *inter partes* reexamination, rejecting all of the asserted claims. (D.I. 202, ex. A) The claims of the '491 patent also stand rejected, but the CRU has not yet issued an ACP in this patent. (*Id.*) On July 19, 2010, the CRU noticed its intent to issue a reexamination certification confirming the patentability of the claims of the '503 patent. (D.I. 204, ex. A) Belden has not yet received a Right of Appeal Notice ("RAN") for any patent.

    b. Concurrently, in a memorandum opinion dated August 24, 2009 ("the memorandum opinion"), the court ruled upon the parties' cross motions for summary judgment of, *inter alia*, infringement and invalidity. (*See* D.I. 216) The court determined that, as a matter of law: 1) certain accused products infringe the Belden patents; 2) certain accused products do not infringe the Belden patents; and 3) the '116 patent is invalid for anticipation. (*See* D.I. 217) The parties have confirmed that the memorandum opinion resolved the issue of infringement, and that only validity remains to be decided in the jury trial scheduled to commence on September 7, 2010. At the

August 25, 2010 pretrial conference, Superior Essex moved that this court stay litigation with respect to the patents at issue and proceed to trial only with respect to the validity of the '503 patent.

2. **Stay of litigation pending reexamination.** Motions to stay invoke the broad discretionary powers of the court. *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D.Del.1990) (citing *Bechtel Corp. v. Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir.1976)). Three general factors inform the court in this regard:

> 1) whether the granting of a stay would cause the non-moving party to suffer undue prejudice from any delay or allow the moving party to gain a clear tactical advantage over the non-moving party; 2) whether a stay will simplify the issues for trial; and 3) whether discovery is complete and a trial date set.

*Enhanced Security Research, LLC v. Cisco Sys., Inc.*, 2010 WL 2573925, at *3 (D. Del. June 25, 2010) (citing *St. Clair Intellectual Prop. Consultants v. Sony Corp.*, 2003 WL 25283239, at *1 (D.Del. Jan. 30, 2003)).

3. **Discussion.** Concurrent litigation and reexamination proceedings present novel issues to the timely and efficient disposition of patent infringement disputes.[1] While allowing the PTO to determine reexamination-specific issues of validity may potentially obviate a multi-issue patent litigation and conserve finite judicial resources, this district carefully considers whether "there is 'even a fair possibility' that the stay would work damage on another party." *Dentsply Int'l*, 734 F. Supp. at 658 (internal

---

[1] One scenario unique to these tandem proceedings is the uncertainty that persists even beyond a district court's judgment of infringement and validity, affirmed by the Federal Circuit, due to an ongoing reexamination which could ultimately render the patent in question invalid. *See i4i L.P. v. Microsoft Corp.*, 598 F.3d 831, 864 (Fed. Cir. 2010). In *i4i*, the Federal Circuit affirmed a jury award of more than $200 million. *See id.* Reexamination proceedings continued for several months after the Federal Circuit's ruling, with the PTO ultimately confirming the validity of i4i's patent.

citations omitted). Upon balance of the aforementioned factors, as explained *infra*, the court concludes that Superior Essex's motion does not warrant the grant of a stay.

    a. **Status of litigation**. Discovery in this action is complete, and trial is scheduled to commence on September 7, 2010. The untimeliness of Superior Essex's oral motion clearly cuts against a stay.

    b. **Simplification**. The court is mindful that reexamination may simplify or eliminate multiple validity issues. Accordingly, a stay is more appropriate when the only issues left for trial completely overlap with those typically resolved upon reexamination. Conversely, a stay is not favored when infringement, validity under 35 U.S.C. § 112, or other issues outside the purview of reexamination remain to be tried. Here, the parties concede that only Superior Essex's allegations of obviousness and anticipation remain at issue, both of which are proper candidates for a reexamination inquiry.

    c. **Prejudice**. The court examines several factors in determining whether the imposition of a stay will result in prejudice upon Belden.

    (1) **Timing of the request for reexamination**. A request for reexamination made well after the onset of litigation followed by a subsequent request to stay may lead to an inference that the moving party is seeking an inappropriate tactical advantage. Belden instituted this action in January 2008 and the various reexaminations were requested approximately 17-20 months later in mid to late 2009. (D.I. 99, exs. A-N)

    (2) **Timing of the request for stay**. Superior Essex has known

about the ACPs in the *inter partes* reexaminations and the rejection in the *ex parte* examination of the '491 patent for several months. Yet it has chosen to reveal its desire to stay litigation only after the issuance of the memorandum opinion, a mere eleven days before trial. A request at this late stage is prejudicial to Belden's investment in trial preparation and does not comport with the notion of judicial efficiency. *See Remington Arms Co. v. Modern Muzzleloading, Inc.*, 1998 WL 1037920, at *1 (M.D. N.C. 1998) (denying stay because "[w]hile this court is cognizant of the advantages of granting the stay, this court finds that the many burdens associated with a stay outweigh the benefits," such burdens including the "considerable monies" already expended, and the "waste of time and judicial resources" that would result from staying the proceedings "especially at this late stage of the litigation . . . ."). The court finds a similar inference of prejudice in the delay between the PTO's notification of the ACPs and Superior Essex's motion to stay.

(3) **Status of reexamination proceedings**. As previously noted, reexamination is an arduous process fraught with the potential for multiple appeals. According to statistics published by the PTO, an *inter partes* reexamination conducted by the CRU has a historical average pendency of 31.4 months. (D.I. 223, ex. B) However, a comprehensive understanding of the reexamination time line requires a consideration of the process after the CRU issues a RAN, to wit, the subsequent appeal by an adversely affected party[2] to the Board of Patent Appeals and Interferences

---

[2]Because both Belden and Superior Essex are parties to the inter partes reexaminations, each may appeal a patentability decision adverse to that party's interests. *See* MPEP § 2673.02.

("BPAI"). The significant span of time between these two events is confirmed by Superior Essex's own evidence, presented in a statistical analysis, which concludes that the current average pendency between receiving a RAN and, subsequently, a decision from the BPAI was roughly equivalent to that of the underlying reexamination by the CRU.[3] (D.I. 223, ex. D at 6) While the possibility of a subsequent appeal to the Federal Circuit extends the time line of this process, only one *inter partes* reexamination has reached this stage, and the parties voluntarily dismissed the case prior to briefing. *See Cooper Cameron Corp. v. Safoco, Inc.*, 368 Fed. Appx. 108 (Fed. Cir. 2009). In short, the reexamination of the patents at issue, having yet to produce a single RAN, may substantially outlast the jury verdict (which will be rendered in approximately 2 weeks), post trial briefing and subsequent Federal Circuit review associated with this litigation. Consequently, only those reexamination proceedings that have been substantially completed will weigh in favor of a stay.

(4) For instance, the court recently granted a stay in *Sigram Schindler Beteiligungsgesellschaft mbH v. Cisco Systems, Incorporated*, 2010 WL 2977552 (D. Del. July 26, 2010) ("*SSBG*"), where the BPAI had received each parties' appeal briefs and had conducted oral argument in one of the two reexaminations. All that remains in the *SSBG* reexamination (excluding a potential appeal to the Federal Circuit) is for the BPAI to render its decision. The court concludes that the docketing of the reexamination appeal serves as a minimal benchmark that would weigh in favor of a

---

[3] In 2009, the PTO averaged 840 days between the filing of a request for reexamination and the issuance of a RAN, 649 days between the issuance of a RAN and the subsequent docketing of the appeal, and an additional 234 days between the docketing and rendering of a BPAI decision. (D.I. 223, ex. D at 6)

stay. In the case at bar, Belden may statistically wait as long as three years after receiving its RANs; this factor cuts against the grant of a stay.

(5) **The relationship of the parties**. Some courts are reluctant to stay proceedings where the parties are direct competitors. See *Nidec Corp. v. LG Innotek, Co.*, 2009 WL 3673433, at * 4 (E.D. Tex. Apr. 3, 2009); and *O2 Micro Int'l Ltd. v. Beyond Innovation*, 2008 WL 4809093, at *2 (E.D. Tex. Oct. 29, 2008). The request for a preliminary injunction may indicate the presence of this type of prejudice. See *Nat'l Oilwell Varco, L.P. v. Auto-Dril, Inc.*, Civ. No. 5-09-cv-00085 (E.D. Tex. January 5, 2010) ("Plaintiff contends that a stay would delay the possibility of [it] obtaining an injunction to prevent ongoing infringement by the defendant and that the defendant is a thinly capitalized company without great resources. The parties are direct competitors and a denial of timely enforcement of either party's patent rights would indeed unduly prejudice that party."). The record does not demonstrate that these parties are direct competitors. And, as Superior Essex correctly notes, Belden has not sought a preliminary injunction.[4] This factor, then, favors Superior Essex's motion to stay.

**4. Conclusion.** Upon balance, the factors mentioned *supra* do not favor either party. In such a case, the court is not inclined to grant a stay. For the foregoing reasons, the court denies Superior Essex's motion to stay litigation.

United States District Judge

---

[4]The request for a preliminary injunction is simply one (non-dispositive) indicia of the presence of direct competition.